Ronge vs. Dawson.

ERNEST RONGE, Plaintiff, *vs.* ELIJAH DAWSON,
Administrator of John Harter.

ERROR TO CIRCUIT COURT, DANE COUNTY.

Heard August 5.]                    [Decided August 15, 1859.

*Replevin—Verdict—Issues—Trial.*

A party commences an action in replevin in *cepit*, and the verdict is "guilty of unjust detention," &c., and judgment is rendered accordingly, such a verdict does not dispose of the issue of *non cepit*, and is, therefore, erroneous in not disposing of all the issues made by the pleas.

The verdict of a jury should, as a general rule, dispose of all the issues made by the pleadings, or no judgment can be entered upon it, the only exception to this rule is where material and immaterial issues are formed, and the material one is passed upon by the jury.

A wrongful detention of property does not necessarily imply a wrongful taking. The action of replevin in *cepit*, will only lie where trespass *vi et armis* would lie; and the plea of not guilty puts the taking in issue, which is the gist of this action.

Replevin in the *detenit* is the statute remedy for the old action of *detenue*, and lies only for the detention.

The facts in this case are sufficiently stated in the opinion of the court.

*Orton & Hopkins,* for the Plaintiff.

*Wakeley & Tenney, & Samuel Crawford* for the defendant.

*By the Court,* DIXON, C. J.    This is an action of replevin, commenced before the adoption of the code, by the intestate of the defendant in error against the plaintiff in error, in the circuit court for the county of Dane, to recover the possession of a mare colt, alleged to have been the property of the intestate, and damages for the unjust taking and detention.   The declaration is in the *cepit*, and charges that the plaintiff in error wrongfully and unjustly took and detained the colt against

Ronge vs. Dawson.

sureties and pledges, until, &c. To it the plaintiff in error pleaded: 1. The general issue denying that he unjustly or wrongfully took or detained the colt: And 2. Property in himself, issue was joined on the second plea by a proper replication. At the April term of the circuit court, 1858, the cause was tried by a jury, who rendered a verdict in the following form: "We, the jury duly empanneled and sworn to try this action, do find the defendant guilty of the wrongful detention of the property described in the declaration, in manner and form as alleged therein, and that said property, to-wit: the brown mare colt described in the declaration, is the property of the plaintiff, and we assess the damages which the plaintiff hath sustained by the unjust detention of said property, against the defendant, at the sum of six cents; and we find the value of the property to be one hundred dollars." Upon this verdict judgment was rendered in favor of the defendant in error (plaintiff below), by which, after reciting the verdict, it was adjudged that the plaintiff retain the possession of the property (the same having been delivered to him by virtue of the original writ), and that he recover the damages so assessed and costs of suit.

The only error assigned upon this record is, that the issues joined between the parties, were not all disposed of, that the issue of *non cepit* was not passed upon; the jury only having decided upon the question of detention and title to the property raised by the second plea. That there can be no final judgment in an action until all the material issues made in it are determined, is a proposition too plain to admit of comment or authority. It may be stated as a general, almost a universal rule, that juries must, by their verdicts, respond specifically to all the issues made by the pleadings; and that if they omit any one, their verdict will be set aside, or if judgment be rendered thereon, it will be erroneous. *Drage vs. Brand*, 2 Wils., 377; *Hardy vs. Bern,* 5, T. R. 540; *Kesler vs. Zem-*

*merschitte,* 1 Texas, 50; *Philips vs. Hill,* 3 id., 397; *Hambleton vs. Dempsey,* 20, Ohio, 168; *Settle vs. Alison,* 8 Georgia, 201; *Van Benthuysen vs. De Witt,* 4 John., 212; *Carr vs. Stevenson,* 5 Hump. (Tenn) 636; *Crutcher vs. Williams,* 4 id. 345; *Moody vs. Keener,* 7 Port. 268; *Vines vs. Brownrig,* 2 Dev. 537; *Toulmin vs. Lesesue,* 2 Ala, 359; *Jewett vs. Davis,* 6 N. H., 518; *Patterson vs. United States,* 2 Wheat., 221; *Garland vs. Davis,* 4 How. U. S.,131; 1 Ld. Raymond, 324; 2 Salk., 372; *Beames vs. Beekman,* 3 Wend., 667; *Swain vs. Roys,* 4 Wis. 50.

The only exceptions to this rule are in those cases, sometimes found in the books, where there are immaterial as well as material issues joined, and the jury finding upon the latter, omit to pass upon the former; and in cases where the verdict in *form* is only upon one of the issues, but where in finding it they indirectly, though not in terms, pass upon the others. In the first class of cases it is very obvious the determination of the material issues, being alone sufficient to settle the rights of the parties, that the verdict or judgment would not be disturbed. In the latter they are regarded more in the nature of defects in *form* than *substance,* and the courts will disregard the omission, or mould the verdict into form, so as to give effect to the intention of the jury ; *ut res magis valeat quam pereat.* Of this description are *Hawks vs. Crofton,* 2 Burr., 698; *Hodges vs. Raymond,* 9 Mass., 316; *Thompson vs. Button,* 14 John., 84; and *Hanna vs. Mills et al,* 21 Wend., 90.

*Hawks vs. Crofton* was an action of assault and battery, to which the defendant pleaded not guilty as to the force and arms, and issue was joined thereon ; as to the special damages he pleaded *son assault demesne,* to which the plaintiff replied *de injuria sua propria, absque tali causa,* on which issue was also joined. There was a general verdict of guilty. The case was before the King's Bench on error, and the judg-

ment was affirmed. The court said that the intention of the jury was manifest and beyond doubt, because they could not have found thus, unless the defendant had failed in his justification. The case of *Hodges vs. Raymond*, is very similar, being an action of trespass *quare clausum fregit*, to which the defendants pleaded not guilty, as to the force and arms, and a special justification as to the residue of the trespass. The jury returned a general verdict of not guilty, upon which judgment was directed to be entered by the supreme court.

*Hanna vs. Mills et al.*, was an action of assumpsit, pleas *non-assumpsit* and payment. The jury passed upon the first plea, and found a verdict for the plaintiff. It was held that error would not lie for the omission to pass upon the second. It is obvious that no verdict for the plaintiff could have been found, if the plea of payment had been sustained.

*Thompson vs. Button*, was an action of replevin, to which the defendant pleaded, first, *non cepit*, second, an advowry, averring the goods taken were his property, to which the plaintiff replied, taking issue. The jury found a verdict for the plaintiff on the issue of *non cepit*, without any finding as to the other issue. Judgment was rendered according to the verdict. On error the judgment was sustained, for the reason that "the jury could not have found the defendant guilty upon the general issue, if he had made out his justification according to his advowry.

It will be seen, however, that there is no similarity between these cases and the present one. For here, although the property may have belonged to the plaintiff, and may have been wrongfully detained by the defendant, it by no means follows that he was guilty of a wrongful taking. The taking may have been lawful, or under authority of the plaintiff, and yet the detention wrongful.

Replevin in the *cepit*, although regulated by our statute,

was a common law action, and could only be maintained where the taking was wrongful or tortious. In this all the authorities agree. Although some cases are *apparently* an exception to the rule, yet they are only, where by reason of the happening of some event, *after* the taking, the defendant was deemed in law a trespasser *ab initio;* such as detaining a distress, after tender of amends and refusal (Comyn Dig. Replevin, A); or a refusal to re-deliver goods taken in execution by an officer, after he had received the amount due on the execution from the defendant; *Gardner vs. Campbell,* 15 John., 401; in both which instances the distrainer and officer were considered trespassers from the beginning. It would only lie where trespass *vi et armis* could be maintained. The plea of *non cepit,* like not guilty, only put in issue the unjust taking. Property in the defendant or a stranger was to be specially pleaded.

The verdict in this case, as in general, in this form of action, was in the nature of a special verdict. And although, as a general rule, verdicts are to be favorably construed, in order that they may prevail, still, where, as in this case, the verdict points specifically to one issue, and omits the other, it cannot be aided by intendment. In the case of a special verdict in trespass, where, as in this action, the *wrongful taking* was the life and gist of the action, without which it could not prevail, no one would contend, it would be sufficient for the jury to find the title of the goods in the plaintiff, and that the defendant wrongfully detained or converted them. So here, unless the property was *wrongfully taken* by the defendant, the action cannot be maintained, and until that question is determined in the plaintiff's favor, he cannot recover. he has tendered the issue, and must abide by it. The action of *replevin* in the *detinet* was purely a statutory remedy, given in place of the old action of *detinue,* which was dilatory in execution, and inadequate to the restoration of the property

Ronge vs. Dawson.

wrongfully detained from the owner. And though he might waive the force, and sue in the *detinet*, where there had been a wrongful taking, as before the statute he could do, by bringing *detinue*, or *trover*, instead of *replevin* or *trespass*, yet the converse of the rule was never true. He could go down, but never up.

We have carefully examined the authorities; *Badger vs. Phinney* 15 Mass., 359; *Baker vs. Foles*, 16 id., 147; *Marston vs. Baldwin*, 17 id., 606; *Illsley vs. Stubbs*, 5 id., 280; *Cummings vs. Vance*, 3 Hill, 282; and *Carter vs. Rathbone*, 1 Hill, 204; by which the counsel for the defendant in error sought to show that the verdict in this case was proper, and that in reality no difference existed between replevin in the *cepit*, and replevin in the *detinet*; but we do not think they sustain the conclusion at all. In Massachusetts, the courts assuming that the action of *detinue* had become entirely obsolete (though there are numerous modern instances of its use in England and many of the American States, viz: Virginia, Kentucky, North and South Carolina, as will be seen by the note and reference to authorities in *Badger vs. Phinney*), by a process of reasoning, to say the least, not a little strained, generously endeavored to apply the action of replevin to cases of *unlawful detention*, without, at the same time, infringing the rule, that there must be a *tortious taking;* until the decision of the case of *Marston vs. Baldwin,* where the broad ground that it would lie under the provisions of their statute of 1789, for an *unlawful detention* was assumed. Prior to that decision the action was sustained upon the somewhat doubtful position, that one lawfully in the possession of the goods of another might be considered as *constructively taking* them, when he refused to surrender them upon the lawful demand of the owner. So that these cases do not affect the question now before us. Those cited from Hill seem equally foreign to the present controversy. The provisions of

the code do not apply to, or affect the action.    The issue as it was formed before the adoption of the code, must be determined, the mode of trial only being governed by it.

Judgment reversed, and a new trial awarded.